**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:09-CV-465-MOC-DCK**

| | |
|---|---|
| STANLEY MARVIN CAMPBELL, Trustee in Bankruptcy for ESA ENVIRONMENTAL SPECIALISTS, INC., | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | **MEMORANDUM AND RECOMMENDATION** |
| PROSPECT CAPITAL CORPORATION, individually and derivatively on behalf of ESA ENVIRONMENTAL SPECIALISTS, INC., | ) ) ) ) ) |
| Consolidated Plaintiff, | ) ) |
| v. | ) ) |
| HOULIHAN SMITH & COMPANY, INC., ADKISSON, SHERBERT & ASSOCIATES, CHARLES J. COLE, SANDRA DEE COLE, MICHAEL ANTHONY HABOWSKI, DENNIS M. MOLESEVICH, and SUNTRUST BANKS, INC., | ) ) ) ) ) ) |
| Defendants. | ) ) |

**THIS MATTER IS BEFORE THE COURT** on "Houlihan Smith's Federal Rule 12(b)(6) Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 68). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motion be granted.

## I. BACKGROUND

Plaintiff Prospect Capital Corporation ("Prospect" or "Plaintiff") is a "mezzanine debt and

private equity firm that, among other financing activities, provides control and non-control debt financing to qualified borrowers." (Document No. 30, p.1).  On or about April 11, 2007, Prospect provided ESA Environmental Specialists, Inc. ("ESA") with $12.2 million in funding. (Document No. 30, p.13).  Officers and directors of ESA allegedly conspired to obtain millions of dollars in financing from ESA through a Ponzi scheme. (Document No. 22, p.3; Document No. 30, pp.6-21). The keystone of the alleged scheme was for the contractor defendants to generate invoices for construction services never performed and supplies never purchased, which were in turn presented to Prospect by ESA to justify draws on the loan. Id.  As the scheme played out, ESA was unable to repay the debt and sought the protection of the bankruptcy court in this district. (Document No. 22, p.3; Document No. 30, pp.6-21).  Prospect purchased ESA's assets in bankruptcy and is suing on its own behalf and on behalf of ESA to recover the loan proceeds. (Document No. 30).

The original "Complaint" in this matter was filed in the United States District Court for the Southern District of New York on January 28, 2009. (3:09-cv-546-MOC, Document No. 1). The "First Amended Complaint" was filed on February 11, 2009. (3:09-cv-546-MOC, Document No. 4).  Several defendants filed motions to dismiss on May 15, 2009. (3:09-cv-546-MOC, Document Nos. 52, 56).  The lawsuit was transferred from New York to this Court on December 30, 2009. (3:09-cv-546-MOC, Document No. 107).  Meanwhile, on October 29, 2009, the bankruptcy court for this district issued an "Order Recommending Withdrawal Of Reference" and effectively transferred its Adversary Proceeding No. 09-3144, involving many of the same parties as the underlying lawsuit, to this Court. (Document Nos. 1 and 5).

On September 2, 2011, the presiding district judge, the Honorable Max O. Cogburn, Jr. issued an Order consolidating Civil Action 3:09-cv-546-MOC with Civil Action 3:09-cv-465-MOC. (Document No. 22).  Judge Cogburn's Order further granted one of the pending motions to dismiss,

denied without prejudice the other pending motions to dismiss, and granted Prospect leave to file an amended complaint. (Document No. 22, pp.16-17).

Plaintiff's "Second Amended Complaint" (Document No. 30) ("Complaint") was filed on October 14, 2011. The Complaint provides that Defendant Houlihan Smith & Company, Inc. ("Houlihan" or "Defendant") "is a corporation with related affiliates" with an address in Chicago, Illinois. (Document No. 30, p.2). The Complaint alleges, *inter alia,* that Defendant Houlihan prepared a "confidential offering memorandum ("Offering Memorandum") dated December 2006," that was provided to Prospect by ESA. (Document No. 30, p.8). Plaintiff contends that "Houlihan knew or should have known that lenders (such as Prospect) would be relying on the false information in the Offering Memorandum in deciding whether to extend credit to ESA." Id. Plaintiff further contends that Defendant Houlihan owed a duty of care in preparing the Offering Memorandum "consistent with the generally accepted standards of the accounting and auditing professions." (Document No. 30, p.9).

The Complaint further alleges that Houlihan and/or Jay Rodgers of Houlihan, also advised Prospect on the investment in ESA by telephone and/or email, provided updated financials via email, and transmitted to Prospect due diligence materials in order for ESA to obtain loans from Prospect. (Document No. 30, p.9). Plaintiff does not, however, allege that these additional calls, emails and/or materials were false, inaccurate, or otherwise misleading. (Document No. 30).

Based on the allegations, Plaintiff concludes that Houlihan is liable to Prospect in its individual capacity for negligence and negligent misrepresentation. (Document No. 30, pp.21-24).

Since the filing of the Complaint, several defendants have settled with Plaintiff, and others have filed their Answers. On November 11, 2011, Defendant Adkisson, Sherbert & Associates ("ASA") filed its "...Renewed Motion To Dismiss..." (Document No. 42). After several delays,

3

"Houlihan Smith's Federal Rule 12(b)(6) Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 68) was filed on January 25, 2012, and is now fully briefed. On March 26, 2012, the undersigned granted Defendant ASA leave to file a motion to enforce a settlement agreement under seal. (Document No. 85). In addressing the status of the case, the undersigned specifically stated:

> It is the Court's intention at this time to resolve the dispute over whether the parties reached a settlement agreement, assuming Defendant's proposed motion to enforce settlement agreement is expeditiously filed, prior to ruling on the pending motions to dismiss. The undersigned further observes that there is no dispute that even if these parties did not reach a settlement agreement, they at least came very close. In addition, other recent filings suggest that Plaintiff and Defendant Houlihan Smith & Company, Inc. also made significant progress toward settlement. See (Document Nos. 40, 56, 62). All these parties are respectfully encouraged to consider redoubling their efforts to resolve their disputes on mutually agreeable terms, in lieu of further Court intervention.

(Document No. 85). On March 30, 2012, Defendant ASA filed its "Motion To Enforce Settlement Agreement" (Document No. 86).

On August 30, 2012, Judge Cogburn determined that Defendant ASA and Plaintiff had reached an enforceable settlement agreement, and further ordered that ASA's pending motion to dismiss (Document No. 42) be denied as moot. (Document No. 101). Following resolution of the ASA motions, immediate review of the remaining motion to dismiss, and a recommendation for disposition to the presiding district judge, is now appropriate.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992);

Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1960 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

In support of its motion, Defendant Houlihan argues that neither the Count I allegation of negligence nor the Count II allegation of negligent misrepresentation states a claim against it. (Document No. 69, p.2). Defendant contends that Plaintiff's claims fail under either New York or

5

North Carolina law because: "(1) Houlihan does not owe Prospect a duty of care and (2) Prospect's reliance, if any, on the allegedly inaccurate financial information does not give rise to a claim against Houlihan because Houlihan did not prepare the financial information and specifically told Prospect as much in the Memorandum's numerous disclaimers." Id. (citing Exhibit A, Document No. 30-1).[1] The crux of Defendant's motion is that it did not prepare or verify the financial information that Plaintiff claims was inaccurate. Defendant relies on the disclaimers in the subject Offering Memorandum attached to Plaintiff's Complaint to support its argument. In most pertinent parts, the Offering Memorandum provides:

### CONFIDENTIALITY AGREEMENT

> . . . The information contained in the Confidential Offering Memorandum has been provided by a number of sources, including ESA and/or its subsidiaries and affiliates, as well as THS and/or its subsidiaries and affiliates. No representation regarding the information is made by Houlihan Smith & Co., Inc. ("Houlihan"), or any of its affiliates, and Houlihan has made no independent verification as to the accuracy or completeness of the information contained in the Confidential Offering Memorandum. By receipt of this information, the recipient agrees that Houlihan and its affiliates shall have no liability for any misstatement or omission or for any opinion expressed in the Confidential Offering Memorandum and agrees that Houlihan and its affiliates shall have no obligation to supplement any information or otherwise provide additional information.
>
> . . .

### NOTICE TO RECIPIENTS

> This Confidential Offering Memorandum (the "Confidential Offering Memorandum") is being furnished by Houlihan Smith & Co., Inc., solely for use by prospective investors in considering the placement of the proposed offering. Certain information contained herein was

---

[1] "[E]xhibits to the complaint are a part of the complaint . . . in the event of a conflict between the bare allegations of the complaint and any exhibit attached ... the exhibit prevails. Fayetteville Investors v. Commercial Builders, Inc., 936 f.2d 1462, 1465 (4th Cir. 1991).

supplied by or on behalf of ESA Environmental Specialists, Inc. ("ESA") as well as Lisamarie Fallon, Inc., d/b/a The Healing Staff ("The Healing Staff" or "THS"). Financial data and projections contained herein were prepared by ESA and THS from information believed by it to be accurate and reliable, in all material respects.

Neither Houlihan nor any of its affiliates has independently verified any of the information and data contained herein and the same are enclosed for informational purposes only. No representation or warranty is made by Houlihan or its affiliates as to the accuracy or completeness of such information. Houlihan and its affiliates shall not have any liability for any representations (expressed or implied) contained in, or any omissions from, this Confidential Offering Memorandum or any other written or oral communication transmitted to the recipient hereof in the course of its evaluation of the proposed financing.

The information contained herein has been prepared to assist interested parties in making their own evaluations of the proposed financing and does not purport to be all inclusive or to contain all of the information that a prospective buyer may desire.

**It is understood that each recipient of this Confidential Offering Memorandum will, in determining whether to participate in the proposed financing described herein, make its own appraisal of, and investigation into, the financial condition and creditworthiness of ESA and the other parties to the transactions described herein based upon such information as it deems relevant and without reliance on ESA, THS or any of their respective affiliates**.

This information and data are not a substitute for the recipient's independent evaluation and analysis and should not be considered as a recommendation by Houlihan or any of its affiliates that any recipient enters into the proposed transaction described herein. None of ESA, THS or Houlihan or any of their respective affiliates, makes any representation or warranty that this Confidential Offering Memorandum is sufficient for the recipient's credit evaluation process.

The Confidential Offering Memorandum includes certain statements, estimates and projections provided by ESA with respect to the anticipated future performance of the Company as well as the anticipated future performance of the Company as a combined entity. Such statements, estimates and projections reflect various

> assumptions by ESA concerning anticipated results, which assumptions may or may not prove to be correct. Neither Houlihan nor any of its affiliates has undertaken any independent investigation or evaluation of such assumptions to determine their reasonableness. No representations are made as to the accuracy or completeness of such statements, estimates or projections or with respect to any other materials herein.

(Document No. 30-1, pp.3-4) (emphasis in original).

After careful review of the Complaint and its attachments, the undersigned finds that Plaintiff has failed to allege plausible facts to support its claims of negligence and negligent misrepresentation as to Defendant Houlihan. In particular, the undersigned notes that although Plaintiff contends that "the duty of care owed by Houlihan was to prepare the Offering Memorandum consistent with the generally accepted standards of the accounting and auditing professions," Plaintiff asserts no facts to support such a duty. (Document No. 30, p.9). Nowhere in the Complaint or exhibits is there any indication that Houlihan is in the accounting or auditing professions, or otherwise bound to such a duty.

Plaintiff filed very similar allegations against Defendant ASA. (Document No. 30, pp.24-28). However, Plaintiff's claims against ASA, in stark contrast to Plaintiff's claims against Houlihan, clearly allege that ASA: is "a professional corporation" (Document No. 30, p.2); "created audited earnings reports" (Document No. 30, p.24); "was at all times licensed to act as accountants and carried on the business of accounting" (Document No. 30, p.25); "supplied the ASA Financials as audited and/or approved" (Document No. 30, p.26); "falsely represented that it audited the financials of ESA" (Document No. 30, p.27); and "falsely certified as accurate ESA's inaccurate earnings reports" Id. Moreover, Exhibit B to the Complaint shows that ASA are "Certified Public Accountants" who completed an audit of ESA's financial statements. (Document No. 30-2). Although the undersigned expresses no opinion as to the merits of the claims against

8

ASA, Plaintiff's contention that the duty owed by ASA is consistent with the generally accepted standards of the accounting and auditing profession is supported by allegations of plausible facts.

As noted above, Plaintiff has alleged that Houlihan is a "corporation" that prepared an "Offering Memorandum" which Plaintiff contends contained inaccurate financial information. The Complaint does include some specific facts about other communications between Houlihan and Prospect, but it does not allege that these communications, or the information conveyed, were false, inaccurate, misleading, or otherwise negligent. Unlike the claims against ASA, Plaintiff asserts no factual basis for finding that Houlihan owed a duty of care "consistent with the generally accepted standards of the accounting and auditing professions."

The undersigned finds this Court's earlier action denying ASA's motion to dismiss without prejudice and allowing Plaintiff an opportunity to amend its First Amended Complaint instructive here. (Document No. 22). First, Judge Cogburn opined that "[w]hile there is debate as to whether substantive New York or North Carolina law would apply, the court need not resolve that issue at this time." (Document No. 22, p.13). Next, Judge Cogburn advised Plaintiff Prospect

> to pay particular attention to (1) the precise financial report/earnings report/or financial statement it contends was negligently prepared and attach that report as an exhibit to the Complaint, (2) **the nature of the relationship between ASA and ESA**, (3) **including a specific allegation as to the profession in which ASA was engaged** and the professional standard, if any, that was allegedly breached by ASA; (4) the manner in which the reports were inaccurate, (5) the **manner in which Prospect relied on such report to its financial detriment**, and (4) the **manner in which ASA communicated such report or other information to Prospect**.

Id. (emphasis added).

Although Plaintiff arguably incorporated some of this advice in the current Complaint, it still appears, at least as to Houlihan, that the Complaint is deficient. (Document No. 30). As noted,

9

Plaintiff does not allege what profession Houlihan was engaged in. The Complaint also provides few, if any, facts regarding the relationship between Houlihan and ESA, or how the Offering Memorandum was communicated to Prospect. Finally, the only specific claim of a false representation is that the Offering Memorandum falsely represented that ESA had EBITDA in 2006 over $1.9 million. (Document No. 30, p.23). However, Plaintiff's own Exhibit A and its lengthy disclaimers assert *ad nauseam* that Houlihan did not provide the allegedly false information, or certify the accuracy or completeness of the financial data and projections in the Offering Memorandum. (Document No. 30-1).

In addition, this Court in this case has specifically addressed the claim of negligent misrepresentation under the Restatement Second of Torts, § 522, adopted by Raritan River Steel v. Cherry Bekaert & Holland, 322 N.C. 200 (1988). (Document No. 22, p.14). In most relevant part, the essential elements of a § 522 claim of negligent misrepresentation includes the following:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a **pecuniary interest**, **supplies false information** for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their **justifiable reliance** upon the information, if he **fails to exercise reasonable care or competence** in obtaining or communicating the information.

Rest 2d Torts § 522 (emphasis added); see also, (Document No. 22, p.14).

Plaintiff Prospect was specifically cautioned that the Court expects "plausible factual allegations that support its claim" and in particular, plausible factual allegations that a defendant provided *false* information, not just "incomplete, inaccurate, or negligently gathered information." (Document No. 22, pp.14-15).

Applying Rule 12(b)(6), as well as Judge Cogburn's previous analysis and advice in this very lawsuit, the undersigned concludes that the Complaint lacks enough facts to state a claim that is

plausible on its face against Defendant Houlihan. Despite being allowed an opportunity to file a Second Amended Complaint with specific guidance from the Court as to what was necessary for claims of negligence and negligent misrepresentation, Prospect has failed to state plausible claims against Houlihan. Even assuming that § 522 applies to Houlihan, the facts as alleged in the Complaint do not plausibly support that (1) Houlihan was the supplier of the allegedly *false* information, (2) that Prospect's reliance on the allegedly false information was justified in light of Exhibit A to its Complaint, or (3) that Houlihan failed to exercise reasonable care or competence in obtaining or communicating the information. See Rest 2d Torts § 522 (1).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Houlihan Smith's Federal Rule 12(b)(6) Motion To Dismiss Plaintiff's Second Amended Complaint" (Document No. 68) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Max O. Cogburn, Jr.

**IT IS SO RECOMMENDED**.

Signed: September 27, 2012

David C. Keesler
United States Magistrate Judge